UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 19-24199-CIV-COOKE/GOODMAN

GROVE TOWERS CONDOMINIUM ASSOCIATION, INC.,

    Plaintiff,

v.

LEXINGTON INSURANCE COMPANY,

    Defendant.

_____/

REPORT AND RECOMMENDATIONS ON (1) PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S AFFIRMATIVE DEFENSES [ECF No. 7] AND (2) PLAINTIFF'S MOTION TO COMPEL APPRAISAL AND STAY OR ABATE THIS MATTER PENDING APPRAISAL [ECF No. 15]

Plaintiff Grove Towers Condominium Association, Inc. ("Grove Towers") filed a Motion to Strike Defendant's Seventh, Eighth, Ninth, and Tenth Affirmative Defenses [ECF No. 7] and a Motion to Compel Appraisal and to Stay or Abate this Matter Pending Appraisal. [ECF No. 15]. Defendant Lexington Insurance Company ("Lexington") filed an opposition in response to Grove Towers' Motion to Strike and Motion to Compel. [ECF Nos. 8; 17]. Grove Towers filed a reply in support of its Motion to Strike and its Motion to Compel. [ECF Nos. 9; 19]. United States District Judge Marcia G. Cooke referred the two motions to the Undersigned for a Report and Recommendations. [ECF No. 18].

For the reasons stated below, the Undersigned **respectfully recommends** that the

District Court **grant** Grove Towers' Motion to Compel Appraisal and to Stay or Abate this Matter Pending Appraisal and **stay** this case (including Grove Towers' Motion to Strike Defendant's Seventh, Eighth, Ninth, and Tenth Affirmative Defenses) until the appraisal is completed.

I.   **Factual Background**

Grove Towers entered into a contract for commercial property insurance with Lexington, bearing policy number 41-LX-066415115-1 (the "Policy"), to insure the Grove Towers Condominiums located at 2843 S. Bayshore Drive, Coconut Grove, Florida 33133 (the "Property") for the period of January 15, 2017 through January 15, 2018. [ECF No. 1-2, pp. 12-13]. On or about September 10, 2017, the Property suffered damage as a result of Hurricane Irma. *Id.* at p. 13.

In its Complaint, Grove Towers alleges that Lexington's Policy provided coverage for the losses, damages, and expenses that Grove Towers incurred. After Hurricane Irma, Grove Towers notified Lexington of its insurance claim and Lexington assigned it claim number LXCC-4006A9 (the "Claim"). *Id.* Lexington acknowledged at least some coverage for the damage to the Property by issuing Grove Towers payments totaling $1,771,572.81. *Id.*; [ECF No. 17, p. 3]. Nevertheless, Grove Towers alleges that Lexington's payments fail to fully compensate it for the covered damages to its Property. [ECF No. 1-2, p. 13].

After Lexington informed Grove Towers that it would not pay for any additional claimed damage, Grove Towers filed suit against Lexington for breach of the Policy in

2

the Circuit Court of the Eleventh Judicial Circuit of Florida, Miami-Dade County (Case No. 2019-020809-CA-01). [ECF Nos. 1-2; 17, p. 3]. Lexington then removed the case to this Court. [ECF No. 1].

On November 21, 2019, counsel for Grove Towers discussed the possibility of resolving this case through an appraisal or through mediation. [ECF No. 19, p. 4]. After Lexington rejected this offer, on January 9, 2020, Grove Towers notified Lexington's counsel that it was invoking its right to appraisal under the Policy and initially selected a public adjuster, Global Pro Recovery, Inc. ("Global Pro") and its president, Daniel Odess, to represent it. [ECF Nos. 15, p. 3; 15-2; 17, p. 5].

The Policy contains an appraisal provision, which provides:

**Mediation Or Appraisal**

If we and you:

***

B. Disagree on the value of the property or the amount of loss, either may request an appraisal of the loss, in writing. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed by any two will be binding. Each party will:

1. Pay its chosen appraiser; and
2. Bear the other expenses of the appraisal and umpire equally.

[ECF No. 15-1, p. 30].

In its motion to compel appraisal, Grove Towers argues that it is entitled to an

appraisal because the Policy allows one to be requested and because it is an appraiser's role to determine the damage caused by the covered loss and the amount of the loss. [ECF No. 15, pp. 4-5]. Lexington opposes Grove Towers' request for an appraisal and argues that: (1) Grove Towers has waived its right to compel appraisal by actively litigating this matter for about six months before demanding appraisal; (2) appraisal is premature because unresolved issues of coverage exist; and (3) Grove Towers' proposed appraiser is not impartial. [ECF No. 17].

In its reply, Grove Towers contends that the case had been before this Court for only ninety days before it demanded appraisal, appraisal was discussed with Lexington's counsel in November 2019, and the case has not been litigated extensively. [ECF No. 19, pp. 3-5]. Moreover, Grove Towers states that it substituted the originally-selected appraiser with a new, impartial appraiser, thereby mooting Lexington's contention. *Id.* at p. 10.

## II. Discussion

### A. Judicial economy and efficiency weigh in favor of an appraisal.

The Policy between Grove Towers and Lexington contains an appraisal provision. [*See* ECF No. 15-1, p. 30]. "In Florida, appraisal provisions contained within insurance policies are generally treated the same as arbitration provisions." *Wright Way Emergency Water Removal, LLC v. Mt. Hawley Ins. Co.*, No. 8:16-cv-1163-T-17MAP, 2016 WL 9526569, at *2 (M.D. Fla. July 29, 2016). So "motions to compel appraisal should be granted

4

whenever the parties have agreed to the provision." *Id.* (citing *Preferred Mut. Ins. Co. v. Martinez*, 643 So. 2d 1101, 1102 (Fla. 3d DCA 1994)). And the "enforcement of appraisal provisions [is] preferred over lawsuits 'as they provide a mechanism for prompt resolution of claims and discourage the filing of needless lawsuits.'" *First Protective Ins. Co. v. Hess*, 81 So. 3d 482, 485 (Fla. 1st DCA 2011).

When an insurer acknowledges that there is a covered loss, any dispute regarding the *amount* of such loss is appropriate for appraisal. *See Gonzalez v. Am. Sec. Ins. Co.*, No. 8:15-cv-1515-36EAJ, 2015 WL 12852303, at *4 (M.D. Fla. Nov. 10, 2015). "Notably, in evaluating the amount of loss, an appraiser is necessarily tasked with determining both the *extent* of covered damage and the *amount* to be paid for repairs." *Cincinnati Ins. Co. v. Cannon Ranch Partners, Inc.*, 162 So. 3d 140, 143 (Fla. 2d DCA 2014) (emphasis in original). Consequently, the question of what repairs are needed to restore a property is a question relating to the amount of loss and not coverage, which is in the province of the court. *See Baldwin Realty Grp., Inc. v. Scottsdale Ins. Co.*, No. 6:18-cv-785-Orl-41DCI, 2018 U.S. Dist. LEXIS 181709, at *8 (M.D. Fla. Sep. 6, 2018).

Here, the plain language of the policy gives Grove Towers a right to appraisal, and courts interpreting this exact policy provision have determined that to be so. *See, e.g.*, *Levi Holding, LLC v. Scottsdale Ins. Co.*, No: 2:18-cv-361-FtM-99CM, 2018 WL 3575082, at **1-2 (M.D. Fla. July 25, 2018); *J&E Invs., LLC v. Scottsdale Ins. Co.*, No. 16-61688-CIV-DIMITROULEAS/Snow, 2016 WL 8793337, at *2 (S.D. Fla. Aug. 18, 2016). Moreover,

Lexington has stated that at least some of the damage caused by Hurricane Irma is covered, but it disputes the amount of damage. On the other hand, Grove Towers believes that the damage caused by Hurricane Irma is much more extensive than Lexington has determined. Because there is no dispute between the parties that the cause of at least some of the damage to the Property is covered under the Policy, the remaining dispute concerning the scope of the damage and the amount owed is appropriate for appraisal.

      **B.**      **Grove Towers has not waived its right to appraisal.**

While courts favor appraisal if the parties' contract contains a provision, "[a] party may . . . waive the right to appraisal if the party maintains a position that is inconsistent with the appraisal remedy or participates in extensive litigation and discovery." *Bullard Bldg. Condo. Ass'n, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 8:06-cv-1194-T-27MSS, 2006 WL 2787850, at *1 (M.D. Fla. Sept. 26, 2006). Often waiver occurs when the party requesting appraisal engages in an aggressive litigation strategy. Lexington argues that Grove Towers' extensive litigation of this case waives its right to an appraisal. [ECF No. 17, p. 6].

A review of the record shows that there are only 22 docket entries in this case from October 2019 through June 2020. In addition to filing the Complaint, Grove Towers attached a request for production of documents to its Complaint. [ECF No. 1-2, pp. 6-11]. Grove Towers filed its motion to strike [ECF No. 7], filed a reply in support of the motion to strike [ECF No. 9], and engaged in a handful of discussions with Lexington to try to

6

resolve the matter and to prepare the joint scheduling report required by this Court. [ECF Nos. 16; 17 p. 4; 19, p. 4]. The parties have also fully briefed Grove Towers' motion to compel. [ECF Nos. 15; 17; 19].

Lexington argues that "Grove Towers has chosen prolonged and active participation in the litigation, for some six months, without demanding appraisal under the Policy. This decision has caused substantial detriment to Lexington." [ECF No. 17, p. 6]. To substantiate this position, Lexington lists the following actions as evidence of Grove Towers' purported "prolonged and active participation in the ligation": (1) propounded a request for production of documents; (2) filed its Certificate of Interested Parties and Corporate Disclosure Statement; (3) moved to strike four of Lexington's affirmative defenses; (4) participated in a party conference pursuant to Local Rule 16.1(b); (5) jointly filed the Joint Scheduling Report; (6) and discussed mediation and the possibility of settlement during a party conference.

Nevertheless, the Policy's appraisal clause does not require invocation of the appraisal right before suit, and Grove Towers' request for an appraisal after the lawsuit has been filed "is not an action inconsistent with the right to appraisal." *See, e.g., ABC Univ. Shops, LLC v. Scottsdale Ins. Co.*, No. 18-60562-CIV, 2018 WL 6271839, at *8 (S.D. Fla. Oct. 18, 2018), *report and recommendation adopted* 2018 WL 6267943 (S.D. Fla. Nov. 30, 2018); *see also Am. Capital Assur. Corp. v. Courtney Meadows Apartment, L.L.P.*, 36 So. 3d 704, 707 (Fla. 1st DCA 2010) (indicating appraisal demand was timely as policy did not contain

7

any language to invoke appraisal within set time from receiving or waiving sworn proof of loss); *Fla. Ins. Guar. Ass'n v. Castilla*, 18 So. 3d 703, 703-05 (Fla. 4th DCA 2009) (explaining appraisal clause may be invoked for first time after litigation has commenced and concluding that party did not act inconsistently with right to appraisal by participating in suit).

Moreover, the Undersigned disagrees that the few filings made by Grove Towers and its modest litigation efforts before this Court since October 2019 constitute a "prolonged and active participation in the litigation." [ECF No. 17, p. 6]. The fact that Grove Towers propounded discovery requests on Lexington does not necessarily mean that it waived its right to appraisal. *See Bullard Bldg. Condo. Ass'n, Inc.*, 2006 WL 2787850, at *1 (finding that the right to appraisal had not been waived where "[t]he case has not been extensively litigated nor have the parties engaged in extensive discovery"); *cf. Shoma Dev. Corp. v. Rodriguez*, 730 So. 2d 838 (Fla. 3d DCA 1999) (finding waiver where parties had engaged in aggressive litigation and discovery for seven months before invoking the arbitration clause); *Gray Mart, Inc. v. Fireman's Fund Ins. Co.*, 703 So. 2d 1170, 1173 (Fla. 3d DCA 1997) (finding waiver where defendant litigated the case for fourteen months and did not seek appraisal until after its dispositive motion had been denied).

Grove Towers engaged in "good faith," cooperative settlement discussions with Lexington in an effort to avoid further litigation and the filing of a motion to compel appraisal, but Lexington rejected these offers. [ECF No. 19, p. 4]. Grove Towers' modest

8

filings in this case and its attempts to resolve this matter early-on do not demonstrate a waiver of the right to appraisal by excessively and/or aggressively litigating the case before invoking its right to appraisal. *See Shoma Dev. Corp.*, 730 So. 2d at 839; *Gray Mart, Inc.*, 703 So. 2d at 1173.

### C. Appraisal is appropriate at this time.

Lexington argues that appraisal is inappropriate here because the parties are disputing whether coverage exists, not the amount of coverage owed. Grove Towers contends that Lexington's argument is illogical because it has already admitted coverage and paid Grove Towers $1,771,572.81 for the property damage claims arising from Hurricane Irma, making payments to Grove Towers through March 2019.

The Undersigned finds that Lexington has admitted coverage under the Policy for at least *some* of the Property's damage from Hurricane Irma and there is still an issue about whether Lexington owes Grove Towers more under the Policy. While litigation of coverage questions may proceed simultaneously with appraisal, when the insurer has admitted coverage in part, litigation of the coverage questions may be stayed until the amount of loss has been determined through appraisal. *See Arvat Corp. v. Scottsdale Ins. Co.*, No. 14-22774, 2015 WL 6504587, at **2-3 (S.D. Fla. Oct. 28, 2015) ("After the appraiser makes a determination as to the amount of loss attributable to each cause, Defendant may still challenge coverage.").

An appraiser is in the best position to determine a fair value for the covered

damage. *Gonzalez*, 2015 WL 12852303, at *4 ("[W]hen an insurer acknowledges that there is a covered loss, any dispute regarding the amount of such loss is appropriate for appraisal."); *Freeman v. American Integrity Ins. Co. of Florida*, 180 So. 3d 1203, 1208 (Fla. 1st DCA 2015) ("[A]ppraisers are charged with determining the amount of loss when an insurer admits to a covered loss and the parties disagree regarding the amount of the loss."). Indeed, an appraisal clause requires "an assessment of the amount of a loss. This necessarily includes determinations as to the cost of repair or replacement and whether or not the requirement for a repair or replacement was caused by a covered peril or a cause not covered, such as normal wear and tear, dry rot, or various other designated, excluded causes." *State Farm Fire and Casualty Co. v. Licea*, 685 So.2d 1285, 1288 (Fla. 1996).

While Lexington argues that coverage is still an ongoing dispute in this case, arranging an appraisal will not prevent it from continuing to challenge coverage after completion of the appraisal. *See Arvat Corp.*, 2015 WL 6504587, at *2. "[T]he submission of [a] claim to appraisal does not foreclose . . . challenging an element of loss as not being covered by the policy." *Liberty American Ins. Co. v. Kennedy*, 890 So.2d 539, 541-42 (Fla. 2d DCA 2005).

Because there is a dispute as to the amount owed for the covered loss, the Undersigned **respectfully recommends** that the case be stayed for an appraisal.

**D.  Grove Towers has chosen a new, impartial appraiser.**

Lexington challenged the impartiality of the originally-chosen appraiser because he is the spouse of Grove Towers' lead counsel in this case and therefore might have a financial interest in the outcome of the case. [ECF No. 17, pp. 14-15].

In its reply memorandum, Grove Towers informed the Court and Lexington that it has "substituted its appraiser and selected an appraiser that is impartial and qualified to serve as an appraiser in accordance with the appraisal provision of the policy." [ECF No. 19, p. 10]. Grove Towers' counsel sent a letter to Lexington's counsel informing Lexington that it will be using Jimmy Farach of All Risk Claims Consultants, Inc. as the appraiser. [ECF No. 19-3].

The Undersigned agrees with Grove Towers that this bias issue is now moot.

**III.  Conclusion**

For these reasons, the Undersigned **respectfully recommends** that Judge Cooke **grant** Grove Towers' Motion to Compel Appraisal and to Stay or Abate this Matter Pending Appraisal [ECF No. 15] and **stay** this case, including Grove Towers' Motion to Strike Defendant's Seventh, Eighth, Ninth, and Tenth Affirmative Defenses [ECF No. 7], until the appraisal is completed.

**IV.     Objections**

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with United States District Judge Marcia G. Cooke. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on June 9, 2020.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Marcia G. Cooke
All Counsel of Record